Merrimack
No. 78-254

HALL, MORSE, GALLAGHER & ANDERSON

v.

KOCH & KOCH
AND
RICHARD W. YOUNG,
EXECUTOR, ESTATE OF JEANNETTE E. CROWLEY, TRUSTEE

August 20, 1979

*Hall, Morse, Gallagher & Anderson*, of Concord (*Robert E. K. Morrill* orally), for the plaintiffs.

*Wiggin & Nourie*, of Manchester (*Gary E. Hicks* orally), for the defendants.

BOIS, J.    This reserved case requires us to determine whether the plaintiffs, a New Hampshire law firm, can attach through trustee process, RSA ch. 512, a credit of the defendants, an Ohio law firm, and thereby obtain quasi in rem jurisdiction over the defendants in order to prosecute an action for intentional interference with contractual relations. We hold that they can and sustain their exceptions.

## Background

The plaintiffs claim that they had a contingent fee contract with the trustee, Richard W. Young, an Ohio resident, who is also the duly appointed executor of the estate of Jeannette E. Crowley, a decedent who was domiciled in New Hampshire when she was killed in a Delta Airlines (Delta) crash at Logan Airport in Boston, Massachusetts, on July 31, 1973. They contend that the executor employed them to handle the probate of the estate and to represent the estate in a wrongful death action against Delta. The plaintiffs claim that the contract provided that the firm's fees for probate work were to be in conformance with standard New Hampshire probate practices, and that their fees in the wrongful death action were to be twenty-five percent of the recovery amount if the case were settled out of court and thirty-three and one-third percent if it went to trial.

The plaintiffs allege that subsequent to their agreement with the executor, the defendants induced the executor to breach that contract and enter into a similar one with them. The defendants then contracted with a New Hampshire law firm to represent the Crowley estate in the wrongful death action and to conduct the probate of the estate. In order to perform the contract, a partner of the New Hampshire firm was appointed to serve as the executor's agent to receive notice of claims against the estate and service of process against him as executor. RSA 553:25. The estate brought suit against Delta in the United States District Court for the District of New Hampshire, *Young v. Delta Airlines Inc.*, Civ. No. 74-48 (D.N.H. September 17, 1976), and Delta admitted liability.

After Delta's admission, the plaintiffs brought an action in superior court seeking an *ex parte* attachment of the credit of the defendants against the estate for the twenty-five percent contingent fee for their services in the wrongful death action. The plaintiffs sought the attachment because prior to instituting the present action, they had brought suit against the defendants in the United States District

Court for the District of New Hampshire for intentional interference with contractual relations, and their suit had been dismissed for lack of in personam jurisdiction over the defendants. The attachment of a res in New Hampshire belonging to the defendants is essential to the plaintiffs' ultimate purpose of obtaining quasi in rem jurisdiction over the defendants in the New Hampshire State courts.

The plaintiffs argued that an attachable res materialized in the form of a credit when Delta admitted liability to the estate. The Superior Court (*Keller*, C.J.) granted the attachment for sixty thousand dollars. While a motion challenging the validity of the attachment was pending in superior court, the estate and Delta reached an out-of-court settlement in the wrongful death action. The estate received $250,000 damages.

The defendants moved for the removal of the attachment, claiming that no res existed in New Hampshire, and that they had insufficient "minimum contacts" with the State to be subjected to its jurisdiction. *Shaffer v. Heitner*, 433 U.S. 186 (1977). Pursuant to RSA 510:4 (Supp. 1977), this State's long-arm statute, the plaintiffs then served a disclosure of trustee, RSA 512:12–16, upon the executor through his New Hampshire agent, RSA 553:25. The executor filed a motion for relief, alleging that he was not physically present in the State, that he had no assets in the State, that he was not validly served with process, and that the defendants had no assets in the State. The executor answered the disclosure of trustee under protest.

Pursuant to RSA 510:4 (Supp. 1977), the plaintiffs then filed a motion to charge the trustee, RSA 512:20. The defendants duly objected. After a hearing on September 15, 1977, the Superior Court (*Brock*, J.) denied the plaintiffs' motion to charge the trustee. The plaintiffs duly excepted. On March 28, 1978, the Court (*Brock*, J.) granted the defendants' motions to dismiss the cause of action and remove the attachment. The plaintiffs' exceptions were noted, and all questions of law were reserved and transferred by *Keller*, C.J.

The major issue presented by this case is whether under the constitutional due process test of *Schaffer v. Heitner*, 433 U.S. 186 (1977), the plaintiffs can secure quasi in rem jurisdiction over the defendants by attaching a credit due them in this State. Before reaching that issue, however, we must dispose of three preliminary issues presented by the defendants.

## Timeliness of Filing of Reserved Case

■ The defendants first argue that the plaintiffs' filing of a reserved case was untimely under superior court rules. RSA 491:App. R 69 (Supp. 1977). The court denied the plaintiffs' motion to charge the

trustee on November 18, 1977, but did not act on the defendants' motions to remove the attachment and dismiss the cause of action. The plaintiffs filed a motion for rehearing on November 28, 1977, but did not file a reserved case. The remaining motions pending in the case were acted upon on March 28, 1978, when the attachment was removed and the cause of action dismissed. After these decrees, the plaintiffs timely filed a reserved case challenging the court's decisions on those motions. The plaintiffs also included in the reserved case their exception to the court's November denial of the motion to charge the trustee. It is that aspect of the reserved case that the defendants complain was untimely filed. The Trial Court (*Keller*, C.J.) overruled the defendants' objection and the defendants excepted. Even if the plaintiffs did not technically comply with the timing requirements of RSA 491:App. R 69 (Supp. 1977), there is nothing before us to indicate that the superior court abused its " 'undoubted authority to suspend Rule [69] if justice required.' "*Manchester Housing Authority v. Arms Textile Manufacturing Co.*, 114 N.H. 346, 347, 320 A.2d 640, 640 (1974), *quoting Timmins v. Brennan*, 103 N.H. 459, 460, 174 A.2d 419, 420 (1961) (citations omitted). Nothing in the record suggests prejudice to the defendants; moreover, there is evidence that they agreed with the plaintiffs' choice of procedure.

*Service of Process*

The defendants also argue that the plaintiffs improperly served the disclosure of trustee on the executor. The plaintiffs served the executor's in-State agent pursuant to RSA 553:25, :29. The defendants contend that the agent appointed pursuant to RSA 553:25 is empowered only to receive service of process against the estate itself and not against the executor as administrator of the estate. This contention ignores the plain language of the statute, which states that the nonresident executor must "appoint some person residing in this state as his agent, to receive notice of claims against the estate and service of process *against him as administrator or executor*." RSA 553:25 (emphasis added).

*Res Judicata*

Lastly, the defendants argue that they must prevail under the doctrine of res judicata. They contend that the final judgment of the United States District Court for the District of New Hampshire dismissing the plaintiffs' identical cause of action for lack of in personam jurisdiction is dispositive of the case presently before us. We reject this argument. Although the "minimum contacts" test for in personam jurisdiction mandated by *International Shoe Co. v.*

*Washington*, 326 U.S. 310 (1945), is now equally applicable to attempts to assert quasi in rem jurisdiction, *Shaffer v. Heitner*, 433 U.S. 186 (1977), it is clear that "the added factor of the attachment of an intangible within the jurisdiction of the state," *Intermeat Inc. v. American Poultry Inc.*, 575 F.2d 1017 (2d Cir. 1978), distinguishes the quasi in rem contacts analysis from the in personam one. "[T]he presence of property in a State may bear on the existence of jurisdiction by providing contacts among the forum State, the defendant, and the litigation." *Shaffer v. Heitner*, 433 U.S. at 207. We hold that a decision holding lack of in personam jurisdiction does not preclude a subsequent attempt to assert quasi in rem jurisdiction.

*Long-Arm Jurisdiction*

We now reach the crux of this case, whether the trial court erred in removing the attachment, denying the motion to charge the trustee, and dismissing the cause of action for lack of quasi in rem jurisdiction. This State's long-arm statute, RSA 510:4 I (Supp. 1977), must "be construed in the broadest legal sense to encompass personal, private and commercial transactions." *Leeper v. Leeper*, 114 N.H. at 297, 319 A.2d at 628. The activity of the nonresident defendants in negotiating to represent an executor of a New Hampshire decedent's estate, and the subsequent employment of a New Hampshire law firm to participate in this task, falls within the purview of the long-arm statute. *Cf. Town of Haverhill v. City Bank & Trust Co.*, 119 N.H. 409, 402 A.2d 185 (1979) (party to a contract to be performed at least in part in New Hampshire is subject to State's jurisdiction under companion long-arm statute); RSA 300:14. We are guided by the analysis in *Shaffer v. Heitner*, 433 U.S. 186 (1977), and *Camire v. Scieszka*, 116 N.H. 281, 358 A.2d 397 (1976), in determining whether exerting jurisdiction over the defendants comports with constitutional due process requirements. The traditional in personam test of jurisdiction is applied now in determining the existence of quasi in rem jurisdiction, *Camire v. Scieszka*, 116 N.H. at 283, 358 A.2d at 399, that is, a forum state may exert jurisdiction over a nonresident defendant if the defendant has "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. at 316, *quoting Milliken v. Meyer*, 311 U.S. 457, 463 (1940); *see Leeper v. Leeper*, 114 N.H. 294, 296, 319 A.2d 626, 628 (1974).

The question whether sufficient contacts exist between the defendants and New Hampshire so that this State can assert quasi in

rem jurisdiction "is one in which few answers will be written 'in black and white. The greys are dominant and even among them the shades are innumerable.'" *Kulko v. Superior Court*, 436 U.S. 84, 92 (1978), *quoting Estin v. Estin*, 334 U.S. 541, 545 (1948). It is "the relationship among the defendant, the forum, and the litigation" that controls whether a State can assert jurisdiction over a nonresident. *Shaffer v. Heitner*, 433 U.S. at 204; *Intermeat Inc. v. American Poultry Inc.*, 575 F.2d at 1023.

In evaluating that relationship, we examine this State's interests in providing a forum for the resolution of the dispute, *Leeper v. Leeper*, 114 N.H. at 296, 319 A.2d at 627, and a review of the nonresidents' "forum-related activities as they relate to the specific cause of action." *Forsythe v. Overmeyer*, 576 F.2d 779, 782 (9th Cir.), *cert. denied*, 99 S.Ct. 188 (1978). Although the federal court decided there was no personal jurisdiction, several significant factors in the present case weigh in favor of the existence of jurisdiction. We now conclude that those factors, combined with the added factor of the presence of an attachable res that is directly related to the underlying cause of action, are adequate for this State to assert quasi in rem jurisdiction in this case. *Intermeat Inc. v. American Poultry Inc.*, 575 F.2d at 1023; *see Shaffer v. Heitner*, 433 U.S. 186 (1977); Cassad, *Shaffer v. Heitner: An End to Ambivalence in Jurisdiction Theory?*, 26 KAN. L. REV. 61, 71 (1977); Note, *Minimum Contacts Analysis Extended to Assertions of In Rem Jurisdiction: Shaffer v. Heitner*, 19 B.C.L. REV. 772, 782 *et seq.* (1978); Comment, *The Expanded Scope of the Sufficient Minimum Contacts Standard: Shaffer v. Heitner*, 63 IOWA L. REV. 504, 508–09 (1977).

The State has a strong interest in assuring the integrity of its probate system and accurately monitoring the disbursement of the assets of a decedent domiciliary. *Cf. Leeper v. Leeper*, 114 N.H. 294, 319 A.2d 626 (1979) (preserving integrity of State's banking system an interest considered in determining jurisdiction). Defendants' counsel conceded at the trial court hearing that the wrongful death settlement was an asset of the Crowley estate that had to be accounted for in probate court. He further conceded that the attorney fees portion of the settlement had to be included in that accounting. The defendants' argument that their credit against the estate for their wrongful death contingent fee is not attachable because it was never physically present in New Hampshire although not without some merit is nevertheless unpersuasive. Although the check in settlement of the estate's claim was routed directly from Delta's insurer to the executor

in Ohio at the suggestion of the executor's New Hampshire counsel and agent for service of process, RSA 556:14 provides that all damages recovered in suits by estate administrators "become a part of the decedent's estate." Therefore, regardless of their actual physical location, the settlement proceeds are as a matter of law present in New Hampshire. *Cf. Hutchings v. Lee*, 119 N.H. 85, 398 A.2d 68 (1979) (mere removal of property from New Hampshire does not deprive State of jurisdiction). A second significant State interest in the present case is to provide a convenient forum for the plaintiffs, who are New Hampshire domiciliaries, to enforce any legitimate expectations of their contractual agreement concerning the representation of the Crowley estate in the wrongful death action. *See* 1 A. CORBIN, CONTRACTS § 1 (1963 ed.).

The activity of the defendants in the present case is similar to that of a defendant law firm in *Willis v. Semmes, Bowen & Semmes*, 441 F. Supp. 1235 (E.D. Va. 1977). A Maryland law firm, representing a Virginia client through local counsel in a bankruptcy proceeding in the United States District Court for the Eastern District of Virginia, was held subject to that court's jurisdiction in a subsequent action brought by the client for malpractice and breach of contract. The federal court stated that to assert jurisdiction over the defendant law firm "clearly falls within the perimeters of due process." *Id.* at 1244.

The defendants' course of conduct in the present case suggests that it would not be unfair to subject them to New Hampshire jurisdiction. *See International Shoe Co. v. Washington*, 326 U.S. 310 (1945). One test of fairness is satisfied when a nonresident commits an out-of-State act, a consequence of which foreseeably is injurious to a citizen of the forum State. *Vitta v. Hackler Chrysler Plymouth, Inc.*, Civ. No. 78-258-D (D.N.H. May 17, 1977); *Kipperman v. McCone*, 422 F. Supp. 860, 874 (N.D. Cal. 1976); *Florendo v. Pan Hemisphere Transport, Inc.*, 419 F. Supp. 16, 19 (N.D. Ill. 1976); *Quattrone v. Superior Court*, 44 Cal. App. 3d 296, 306, 118 Cal. Rptr. 548, 554 (1975); *Commonwealth v. Beneficial Finance Co.*, 360 Mass. 188, 227–28 n.8, 275 N.E.2d 33, 57 n.8 (1971), *cert. denied*, 407 U.S. 910, 914 (1972), *citing* RESTATEMENT OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 18 (1965). *See generally State v. Luv Pharmacy, Inc.*, 118 N.H. 398, 388 A.2d 190 (1978). A second fairness test is satisfied when a nonresident invokes "the benefits and protections of the laws of the [forum]." *Florendo v. Pan Hemisphere Transport, Inc.*, 419 F. Supp. at 19; *accord, Energy Reserves Group, Inc. v. Superior Oil Co.*, 460 F. Supp. 483, 502 (D. Kan. 1978). *See generally Leeper v. Leeper*, 114 N.H. at 296, 319 A.2d at 628. We hold that if the allegations contained in the plaintiffs' pleadings

are taken as true, the defendants had full knowledge that a New Hampshire law firm would be injured by their conduct. We also hold that the defendants have utilized the laws and courts of New Hampshire in pursuing their law firm's business and realizing economic benefit.

The credit due to the defendants from the Crowley estate is directly related to the plaintiffs' underlying cause of action for intentional interference with contractual relations. The credit was legally present in New Hampshire at the time the plaintiffs sought attachment, instituted their cause of action, and sought to charge the trustee. The presence of this intangible res, which did not exist at the time the federal suit was dismissed for lack of jurisdiction, is now enough to subject the defendants to quasi in rem jurisdiction. We sustain the plaintiffs' exceptions to the trial court's removal of the attachment, denial of the motion to charge the trustee, and dismissal of their cause of action. We order this case to proceed on the merits.

*Exceptions sustained.*

Brock, J., did not sit; the others concurred.